1

2

3

4

5

6

7

FILED

14 FEB 21  PM 2: 11

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                              DEPUTY

8           **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| AQUI ES TEXCOCO, INC. and FRANCISCO PEREZ<br><br>Plaintiffs,<br><br>vs.<br><br>EDUARDO MALDONADO LOPEZ, an individual; ALEJANDRO LOPEZ FERREIRA, an individual; SANDRA CASTILLO, doing business as Aqui Esta Texcoco; AQUI ESTA TEXCOCO; and DOES 1 through 10, inclusive<br><br>Defendants.<br><br>AND RELATED CASES AND COUNTERCLAIMS | CASE NOS. 12-CV-2113-BEN (WVG); 12-CV-1215-BEN (WVG)<br><br>**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Docket No. 35] |

21          Before this Court is a "Motion for Partial Summary Adjudication" filed by

22     Eduardo M. Lopez and Alejandro L. Ferreira. (Docket No. 35).[1]  This Court interprets

23     this as a motion for partial summary judgment pursuant to Federal Rule of Civil

24     Procedure 56.  For the reasons stated below, the Motion is **DENIED**.

25                              **BACKGROUND**

26          This matter involves two cases before this Court which have been consolidated.

27     _____

28     [1] Although this case addresses affirmative defenses asserted in 12-CV-1215, the motion was filed and docketed in 12-CV-2113.  The cases have been consolidated for trial, and 12-CV-2113 has been designated the lead case.

The motion addresses affirmative defenses to the Complaint in 12-CV-1215, but both cases are relevant to the Motion.

In the first case, 12-CV-1215, Alejandro Lopez Ferreira and Eduardo Maldonado Lopez ("1215 Plaintiffs") filed a claim for wages against Aqui Es Texcoco and its owner and general manager, Francisco Perez ("1215 Defendants"). In the Complaint filed in state court on April 13, 2012, the 1215 Plaintiffs alleged they were not paid overtime, were not paid the minimum wage for certain hours worked, and were not compensated for missed meal and rest periods. The 1215 Defendants removed the case to federal court on May 21, 2012, and filed an answer on May 25, 2012, asserting the affirmative defenses at issue in this Motion.

On June 29, 2012, the defendants in 12-CV-1215 filed a separate complaint regarding alleged intellectual property violations. That case was removed to federal court on August 27, 2012, and has been designated 12-CV-2113. In the second case, the plaintiffs ("2113 Plaintiffs") sought damages against the plaintiffs from the first case, Eduardo Maldonado Lopez and Alejandro Lopez Ferreira. They also sought damages from Sandra Castillo, all defendants doing business as "Aqui Esta Texcoco," the Aqui Esta Texcoco business entity, and Does 1-10, inclusive. The original complaint alleged that Lopez, Ferreira, and Castillo are the general partners of "Aqui Esta Texcoco," a restaurant which competes with "Aqui Es Texcoco." It claims that, after Lopez and Ferreira were fired from Aqui Es Texcoco, the individual defendants formed a competing restaurant. It also claims that Aqui Es Texcoco is a registered trade name with the U.S. Patent and Trademark Office.

In a First Amended Complaint (FAC) filed May 21, 2013 in 12-CV-2113, the 2113 Plaintiffs allege that only Ferreira and Castillo are the general partners of Aqui Esta Texcoco. They allege that the service mark "Aqui Es Texcoco" was registered with the U.S. Patent and Trademark Office. The FAC only alleged service mark and trade secret claims against Castillo, Ferreira, and Aqui Esta Texcoco, and not against Lopez. It accused all defendants of trade libel in order to enhance Aqui Esta Texcoco

1 as a competing entity.

2     The cases were consolidated on July 2, 2013. (Docket No. 33).

3     On November 28, 2013, Eduardo Maldonado Lopez and Alejandro L. Ferreira,
4 as 1215 Plaintiffs, filed the instant motion. They seek summary judgment regarding
5 two affirmative defenses claimed by the 1215 Defendants in the wage case, Aqui Es
6 Texcoco and Perez. Movants contend that the affirmative defenses of offset and lack
7 of commerce must fail.

8                         **LEGAL STANDARD**

9     Summary judgment is appropriate when "there is no genuine dispute as to any
10 material fact and the movant is entitled to judgment as a matter of law." FED. R.
11 CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48
12 (1986). In considering a summary judgment motion, a court examines the evidence
13 in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*,
14 369 U.S. 654, 655 (1962).

15     A moving party bears the initial burden of showing there are no genuine
16 issues of material fact. *Travelers Indem. Co. v. Arena Grp. 2000, L.P.*, No.
17 05-cv-1435, 2007 WL 4170421, at *5 (S.D. Cal. Nov. 20, 2007) (citing *Celotex
18 Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). It can do so by negating an essential
19 element of the non-moving party's case, or by showing that the non-moving party
20 failed to make a showing sufficient to establish an element essential to that party's
21 case, and on which the party will bear the burden of proof at trial. *Id.* The burden
22 then shifts to the non-moving party to show that there is a genuine issue for trial.
23 *Id.*

24     The moving party must support their assertion that a fact is not subject to
25 genuine dispute by either: a) citing to materials in the record, such as depositions,
26 documents, electronically stored information, affidavits or declarations, stipulations,
27 admissions, interrogatory answers, or other materials; or b) showing that the
28 materials cited do not establish the absence or presence of a genuine dispute, or that

1 an adverse party cannot produce admissible evidence to support the fact. FED. R.

2 CIV. P. 56(c)(1).

3       On a motion for summary judgment, a party does not necessarily have to

4 produce evidence in a form that would be admissible at trial, as long as the

5 requirements of Federal Rule of Civil Procedure 56 are met. *Fraser v. Goodale*,

6 342 F.3d 1032, 1036-37 (9th Cir. 2003) (citation omitted). Affidavits or

7 declarations used to support or oppose a motion must be made on personal

8 knowledge, set out facts that would be admissible in evidence, and show that the

9 affiant or declarant is competent to testify on the matters stated. FED. R. CIV. P.

10 56(c)(4).

11       "Only disputes over facts that might affect the outcome of the suit under the

12 governing law will properly preclude the entry of summary judgment. Factual

13 disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S.

14 at 248. As a general rule, the "mere existence of a scintilla of evidence" will be

15 insufficient to raise a genuine issue of material fact; there must be evidence on

16 which the jury could reasonably find for the non-moving party. *Id.* at 252.

17 **DISCUSSION**

18 A.  The Affirmative Defense of Offset

19       The 1215 Defendants asserted "offset" as an affirmative defense. The

20 California Supreme Court has held that "it is well settled that a court of equity will

21 compel a set-off when mutual demands are held under such circumstances that one

22 of them should be applied against the other and only the balance recovered."

23 *Harrison v. Adams*, 20 Cal. 2d 646, 648 (1942). "The right of setoff (also called

24 'offset') allows entities that owe each other money to apply their mutual debts

25 against each other, thereby avoiding 'the absurdity of making A pay B when B owes

26 A.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19 (1995) (citation

27 omitted).

28 ///

*1. Prior Payment*

The 1215 Plaintiffs have failed to carry their burden of showing that the timing of the instant claims precludes an offset.  Plaintiffs cite to California Code of Civil Procedure § 431.70, which states that:

> Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the demands are compensated so far as they equal each other . . .

The 1215 Plaintiffs argue that the doctrine allows a defendant to assert a defense claim on the basis that the defense claim is "prior payment."  (Mot. at 5). The 1215 Plaintiffs argue that this is not satisfied because the defendants' trademark claims did not arise until after the employment relationship ended and the new restaurant was opened.  (*Id.*)

The 1215 Plaintiffs have demonstrated that any wage claims were due before the new restaurant was open and any intellectual properly liability arose, but they have not demonstrated to this Court that this precludes offset.  The 1215 Plaintiffs nowhere demonstrate that any "prior payment" requirement is not satisfied by the fact that the liability arose before the lawsuit.  The 1215 Plaintiffs do not cite authority that requires that the offset asserted by a defendant must arise before the liability claimed by a plaintiff.  There is no apparent reason for a court to apply such a rule.  The 1215 Plaintiffs also did not demonstrate that the 1215 Defendants asserted the offset before the alleged liability to the defendants arose.

*2. Mutuality*

In order to warrant a setoff, "the debts must be mutual and the principle of mutuality requires that the debts should not only be due to and from the same person, but in the same capacity."  *Kaye v. Metz*, 186 Cal. 42, 49 (1921) (quotation omitted); *Advance Indus. Finance Co. v. W. Equities, Inc.*, 173 Cal. App. 2d 420, 427 (2d Dist. 1959) (citations omitted).

1      In the case at hand, mutuality is clearly satisfied on one side. The wage debt

2 is allegedly owed by, and the trademark debt is owed to, Perez and Aqui Es

3 Texcoco. The matter is less clear on the other side. The wage debt is allegedly

4 owed to Lopez and Ferreira in their individual capacities. In their opposition to this

5 Motion, Perez and Aqui Es Texcoco specified which debt they sought to use to

6 offset the wage claim. They specified that "the claim is sought to be offset by

7 defendants' trademark claim against FERREIRA (and CASTILLO as partners in

8 AQUI ESTA TEXCOCO)." (Opp'n at 7). They argue that offset is appropriate

9 because the liability of a partnership passes jointly and severally to the individual

10 general partners. (*Id.*)

11      This Court determines that it is premature at this juncture to determine

12 whether the mutuality requirement is satisfied.

13      Ferreira is alleged to be a general partner in Aqui Esta Texcoco. A

14 partnership is an entity distinct from its partners, Cal. Corp. Code § 16201, and

15 property acquired by a partnership is property of the partnership and not of the

16 individual partners, Cal. Corp. Code § 16203. The partnership is liable for losses

17 caused by a wrongful act or omission, or other actionable conduct, of a partner

18 acting in the ordinary course of business of the partnership or with the authority of

19 the partnership. Cal. Corp. Code § 16205. All partners are jointly and severally

20 liable for all obligations of the partnership. Cal. Corp. Code § 16206.

21      The 2113 Plaintiffs have named the partnership and the individual partners as

22 defendants in the 2113 lawsuit. Where partners are joined with the partnership as

23 defendants, a judgment against them in their individual capacities is valid, based

24 upon their statutory joint liability. *Harbor City Canning Co. v Dant*, 201 Cal. 79,

25 87 (1927). However, a judgment creditor cannot levy execution against the assets

26 of the partner to satisfy a judgment based on a claim against the partnership unless

27 one of four conditions has been met. Cal. Corp. Code § 16307(d). Those

28 conditions require that (1) a judgment has been obtained against the partnership and

12cv2113

1   a writ of execution on the judgment has been returned unsatisfied, (2) that the

2   partnership is a debtor in bankruptcy, (3) that the partner has agreed that partnership

3   assets need not be exhausted, or (4) that a court has granted permission. *Id.* It is

4   unknown at this time if any of these conditions apply or will apply here.

5          The 1215 Plaintiffs argue that the Defendants cannot offset a liability owed to

6   Ferreira in his individual capacity with a liability allegedly owed in his partnership

7   capacity. California precedent is not clear on this issue. Plaintiffs cite to *Carnation*

8   *Co. v. Olivet Egg Ranch*, 189 Cal. App. 3d 809 (1st Dist. 1986). In *Carnation*, the

9   Court considered a situation in which a defendant, Kristal, attempted to offset a

10  liability he owed Carnation as an individual or as part of a later partnership, with a

11  claim against Carnation held by an earlier, separate partnership. *Id.* at 820.

12  Carnation successfully argued that he could not use the claim of a different

13  partnership as an offset, as the other partnership had no obligation to satisfy the

14  obligations of the defendant or other entities at issue. *Id.* at 820-21. However, this

15  case does not compel the same result here. The equitable considerations posed by a

16  defendant attempting to assert a partnership claim to offset an individual liability

17  are different from the equities of allowing a defendant to assert a partnership

18  liability against an individual liability asserted by one of the partners. For instance,

19  while a partnership has no obligation to satisfy individual obligations, an individual

20  may be required to satisfy partnership obligations. Additionally, the impact on

21  other partners may differ.

22         At this stage of litigation, it is unclear whether either claim will prevail or

23  whether the partnership entity will be able to satisfy any judgment. Normally, a

24  court should first determine whether a party will prevail on his claim and, if so, how

25  much he will recover. *See Briggs v. United States*, No. C 07-5760, 2008 WL

26  4667117, at *4 (N.D. Cal. Oct. 22, 2008). Only after that liability is established is it

27  appropriate to evaluate defensive setoffs. *See id.* ("[I]t would be premature to grant

28  defendant summary judgment before deciding whether plaintiff is in fact entitled to

1   recover on his claim and how large that recovery will be."). Courts have denied

2   summary judgment as premature where a party asked that the court determine the

3   offset. *Id.*; *see also Enodis Corp. Employers Ins. Co of Wausau*, No. CV-3-866,

4   2004 WL 5642006, at *3 (C.D. Cal. July 13, 2004) (denying summary judgment on

5   offset where it would require making a final determination on the claims, involving

6   complex issues of law and fact); *In re County of Orange*, 219 B.R. 543, 566 (Bankr.

7   C.D. Cal. 1997) (determining if setoff was warranted would require evaluation of

8   equities which depended on a resolution of factual issues that was inappropriate on

9   summary judgment).

10        In this instance, 1215 Plaintiffs are not asking the Court to determine the

11   outcome of each claim or the size of the offset. Instead they ask this Court to

12   determine that offset will not be appropriate. However, this Court cannot make that

13   determination on the basis of mutuality at this time. Offset is an equitable doctrine,

14   and the equities of this case are unknown. For instance, if both claims succeed, it is

15   unclear whether the trademark claims could be satisfied by partnership assets, or if

16   Mr. Ferreira would be required to satisfy the judgment individually. This Court is

17   not determining, for instance, that offset is inappropriate if the partnership can

18   satisfy the judgment. However, given the many uncertainties surrounding an

19   equitable situation that may never arise, this Court will not determine as a matter of

20   law that an offset affirmative defense cannot succeed. If necessary, this Court will

21   consider the matter when damages are determined.

22        The 1215 Plaintiffs' Motion for Partial Summary Judgment is therefore

23   **DENIED** as to the affirmative defense of offset.

24   B. The Affirmative Defense of Lack of Commerce

25        The 1215 Plaintiffs also ask this Court to grant summary judgment regarding

26   the 1215 Defendant's affirmative defense of lack of commerce. As an affirmative

27   defense, the 1215 Defendants asserted that they were not subject to claims under the

28   Fair Labor Standards Act (FLSA) because they were never at any time engaged in

1   commerce, or in the production of goods for commerce, or employed in an

2   enterprise engaged in commerce. (1215 Answer at 21). In their capacity as 2113

3   Plaintiffs, the same parties asserted that Castillo, Ferreira, and Aqui Esta Texcoco

4   violated the Lanham Trademark Act and California law by using a restaurant name

5   substantially similar to "Aqui Es Texcoco," which has been registered with the

6   United States Patent Office and California Secretary of State. (2113 FAC ¶¶ 22-31).

7        The 1215 Plaintiffs argue that Perez and Aqui Es Texcoco cannot argue that

8   they were not engaged in commerce for FLSA purposes because federal trademark

9   registration and trademark claims require that the name was used in commerce.

10   (Mot. at 7). The 1215 Plaintiffs point out that the registration of the "Aqui Es

11   Texcoco" service mark asserts a first use in commerce in April 2008. (*Id.* at 8;

12   Cleary Decl. Ex. 1 at 1). They contend that this constitutes an admission that the

13   service mark was used in interstate commerce before Ferreira was hired in June

14   2008. (Mot. at 8).

15        Perez and Aqui Es Texcoco argue that FLSA applies only where the party

16   was engaged in interstate commerce, but that federal trademark law applies when a

17   mark is used in commerce. (Opp'n at 8). Defendants assert that "commerce" in

18   trademark law "applies to any commercial activity." (*Id.*) Defendants argue that the

19   1215 Plaintiffs were cooks working in a single local restaurant, and that the

20   complaint did not allege that plaintiffs were engaged in interstate commerce. (*Id.*)

21   The 1215 Defendants also contend that whether the 1215 Plaintiffs' activities relate

22   to "commerce" under FLSA is a question of fact that should not be resolved by

23   summary judgment. (*Id.* at 9).

24        Plaintiffs correctly dispute Defendants' interpretation of the requirements of

25   federal trademark law. Federal law allows the owner of a trademark "used in

26   commerce" to request registration of its trademark. 15 U.S.C. § 1051(a).

27   Registration requires the applicant to submit a verified statement specifying that the

28   mark "is in use in commerce." 15 U.S.C. § 1051(a)(3)(C). However, the meaning

12cv2113

1  of "commerce" is restricted to mean all commerce which may lawfully be regulated
2  by Congress.  15 U.S.C. § 1127.   Federal jurisdiction over trademark cases rests on
3  the Commerce Clause and sweeps as broadly as possible.  *Playboy Enters., Inc. v.*
4  *Netscape Comm. Corp.*, 354 F.3d 1020, 1024 n. 11 (9th Cir. 2004).  The Trademark
5  Manual of Examining Procedure § 903.02. states that: "The date of first use in
6  commerce is the date when the goods were first sold or transported, or the services
7  were first rendered, under the mark in a type of commerce that may be lawfully
8  regulated by Congress, if such use is bona fide and in the ordinary course of trade."
9  It is therefore clear that for the Lanham Act to apply, the mark must be used in
10  "commerce" such that Congress may regulate it, and that this requires more than
11  simply engaging in commercial activity.

12       Whether the parties engaged in commerce such that the FLSA applies is a
13  disputed question of material fact.  The 1215 Defendants appear to assert that there
14  is some basis for concluding that the exact commerce requirements of the wage and
15  trademark case differ.  More importantly, Defendants clearly dispute whether the
16  commerce requirement is met in the wage case, and present arguments that FLSA
17  should not apply to employees of a local restaurant.

18       The critical question, therefore, is whether this Court is obliged to consider
19  the actions of Perez and Aqui Es Texcoco in filing an application and in asserting a
20  federal law claim based on federal registration, as resolving this dispute.  Although
21  Movants do not clearly state the basis for doing so, they appear, in essence, to be
22  asking this Court to consider the filing an admission that prevents the 1215
23  Defendants from arguing lack of commerce.

24       Factual assertions in pleadings, unless amended, are considered judicial
25  admissions conclusively binding on the party who made them.  *Am. Title Ins. Co. v.*
26  *Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  Judicial admissions must be
27  "deliberate, clear, and unequivocal."  *Heritage Bank v. Redcom Labs., Inc.*, 250
28  F.3d 319, 329 (5th Cir. 2001); *Ramirez v. City of Phoenix*, No. 12-cv-639, 2013 WL

1    474361, at *5 (D. Ariz. Feb. 7, 2013); *Truckstop.Net, L.L.C. v. Sprint Comms. Co.,*

2    *L.P.*, 537 F. Supp. 2d 1126, 1136 (D. Idaho 2008). Where the party making the

3    purported judicial admission explains the error in a subsequent pleading or by

4    amendment, the trial court must accord the explanation due weight. *Sicor Ltd. v.*

5    *Cetus Corp.*, 51 F.3d 848, 859-860 (9th Cir. 1995).

6        The 2113 Plaintiffs do not clearly and directly state that they used the mark in

7    interstate commerce, or that they have engaged in interstate commerce. However,

8    they do assert that they have a federally-registered name, and that use of a similar

9    name violates federal laws that have a commerce predicate.

10       The Opposition of the 1215 Defendants indicates that, in asserting trademark

11   claims, Defendants did not believe they were alleging that they had used the mark in

12   commerce in such a way that they would be subject to FLSA requirements.

13   Defendants may have believed that this was not a requirement for registering their

14   mark and bringing their claim. As addressed above, Defendants may not understand

15   the commerce requirements of the Lanham Act. Defendants' arguments can fairly

16   be read to state that they did not concede that they were engaged in commerce in

17   manner that would subject them to the FLSA because they did not believe that

18   asserting those claims required that factual predicate. Regardless of the accuracy of

19   this belief, Defendants have provided a credible reason for this Court not to

20   interpret their assertion of Lanham Act claims as an admission that they engaged in

21   commerce that subjected them to FLSA.

22       Given that Defendants have, at most, made claims in another case from which

23   this Court might infer an admission regarding commerce, and the fact that

24   Defendants' explanation indicates that they did not believe they were making such

25   an admission, this Court finds it inappropriate to infer a judicial admission on this

26   material fact.

27       Plaintiffs have not otherwise demonstrated that this material fact is not in

28   dispute or asserted another procedure by which this Court could find that the 1215

1  Defendants cannot argue lack of commerce because of the trademark claims or the
2  application.  Even if Perez stated in the application that he used the mark in
3  commerce, this does not conclusively demonstrate that he actually did so.

4        Even if it may be inconsistent to claim to engage in commerce for purposes of
5  the Lanham Act, and to claim not to engage in commerce for purposes of FLSA,
6  Plaintiff has presented no argument as to why this Court must resolve that
7  inconsistency by striking the affirmative defense.  The extent to which the parties
8  have engaged in commerce is a disputed question of material fact which will affect
9  the validity of both the Lanham Act and FLSA claims.

10       The Motion for Summary Judgment on the defense of lack of commerce is
11  therefore **DENIED**.

12                                  **CONCLUSION**

13       For the reasons stated above, the Motion for Partial Summary Judgment is
14  **DENIED**.

15       **IT IS SO ORDERED**.

16

17  Dated:  February 21, 2014

18                                             HON. ROGER T. BENITEZ
                                               United States District Judge
19

20

21

22

23

24

25

26

27

28